**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY, as subrogee of THE** | ) | |
| **WESTIN PEACHTREE PLAZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO:** |
| | ) | **1:19-cv-04807-MLB** |
| **vs.** | ) | |
| | ) | |
| **STEVE AYERS CONSTRUCTION** | ) | |
| **CO., INC., and SMYRNA RIGGING** | ) | |
| **CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT SMYRNA RIGGING CO., INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY AND REPORT OF FRANK HAGAN [DOCKET NO. 77]

COMES NOW Defendant Smyrna Rigging Company ("Smyrna Rigging"), a Defendant in this case, by and through its undersigned counsel, and files this Response in Opposition to Plaintiff's Motion to Exclude Certain Testimony and Report of Frank Hagan [Docket No. 77] ("Response"), and respectfully shows the Court as follows:

## PRELIMINARY STATEMENT

It is the height of irony that Plaintiff here complains that Smyrna Rigging's

- 1 -

expert, Frank Hagan, did not perform testing and calculations on machinery and ductwork that had been carefully cleaned and/or discarded some twenty-six (26) months earlier by Plaintiff's own agents. Such analysis was impossible to Hagan when the threat of litigation had not yet been communicated to any defendant.

## I.    ARGUMENT AND AUTHORITIES

Plaintiff contends that Hagan's opinions regarding the proper functionality of the fire dampers in this case are unreliable, not based on sound methodology or evidence, are not helpful to the jury, and are confusing, misleading and more unfairly prejudicial than probative. However, (1) knowing the exact time it would take for the fire dampers to be triggered does not prevent an expert from reaching the conclusion that properly functioning fire dampers could have prevented the fire from spreading, (2) Hagan was limited in the amount of testing that he could perform since Westin destroyed vital evidence from the scene, and (3) the lawyers involved in this case do not have the expertise necessary to explain to a jury how and why the Westin failed to meet the applicable fire protection safety codes in maintaining the fire dampers or mitigating other fire hazards. Therefore, Plaintiff's motion to exclude should be denied.

"A district court's gatekeeper role under Daubert is not intended to supplant

the adversary system or role of the jury." <u>Maiz v. Virani</u>, 253 F 3d 641, 666 (11th Cir. 2001). The appropriate method of attacking an expert's opinions is thorough cross-examination, explanation of the burden of proof, and offering contrary evidence. <u>Daubert v. Merrell-Dow Pharmaceuticals, Inc.</u>, 509 US 579 at 596 (1993). The <u>Daubert</u> factors for admissibility of expert opinions provide a flexible framework for the district court. <u>United States v. Brown</u>, 415 F. 3d 1257, 1268 (11th Cir. 2005). Factors from <u>Daubert</u> are not an exhaustive list of considerations, but they should be analyzed to the extent possible. <u>Quiet Tech. D C-8, Inc. v. Hurel Dubois UK Ltd.</u>, 326 F. 3d 1333, 1341 (11th Cir. 2003).

When judging the reliability of an expert opinion a District Court has "substantial discretion." <u>United States v. Majors</u>, 196 F. 3d 1206, 1215 (11th Cir. 1999). The party offering the opinion only needs to prove by a preponderance of the evidence that the testimony is reliable but is not required to prove the conclusions are scientifically correct. <u>Allison v. McGhan Medical Corp.</u>, 184 F. 3d 1300, 1312 (11th Cir. 1999). Accordingly, the inquiry into the expert opinions must focus on the principles and methodology and not the expert's conclusions. <u>Fox v. Gen. Motors, LLC</u>, No. 1:17-CV-209-MHC, 2019 WL 3483171, at *4 (N.D. Ga. Feb. 4, 2019).

1. **Frank Hagan's opinions in his report and deposition testimony that the fire dampers were not functioning properly are founded in experience, data and science, are not mere Ipse Dixit, and should be admitted.**

Frank Hagan is professional engineer and has over thirty years of experience in mechanical engineering and has analyzed more than 2,000 failures of various types, and his qualifications have not been questioned by the Plaintiff. (See Plaintiff's Motion to Exclude pg. 9, excerpts attached hereto as Exhibit "1"). Mr. Hagan's investigation was conducted pursuant to National Fire Protection Association 921, Guide for Fire and Explosion Investigations. (Hagan Report pg. 2; report attached hereto as Exhibit "2"). After careful review of several documents, applicable fire codes, handbooks, scientific literature, and an in-person inspection of the site at issue, Mr. Hagan drafted a report and findings of his conclusions. (See Hagan Report pg. 2). He offered these opinions to a reasonable degree of engineering and scientific certainty based on data collected to date. (See Hagan Report pg. 5). Therefore, Mr. Hagan's opinions are admissible because they were formed using acceptable methodologies from the NFPA, were based on sufficient facts and data from this case, and were the product of principles and methods that were reliably applied to the facts of this case.

Plaintiff contends that Mr. Hagan's opinions are unreliable because he does

not rely on scientific reasoning or methodology to reach his opinion that if the fire dampers were functioning properly, they would have activated and stopped the fire from spreading. Specifically, Plaintiff mentions that a Response Time Index ("RTI") test would have to be utilized to determine whether or not the fusible link would have melted. While Plaintiff tries to focus on the fact that the RTI test was not conducted, it ignores the fact that the data necessary for any such testing was destroyed by Plaintiff.  Having eliminated the scene of the fire, Plaintiff should not now be heard to complain.

Defendant Smyrna Rigging has supplied to the record the Declaration of Frank E. Hagan. This declaration refers to NFPA 921 Guide for Fire and Explosion Investigations which sets forth protocols and methodology for the analysis of fire scenes. A comparison between the protocols of NFPA 921 and the facts of this case clearly demonstrates the failings of plaintiff in its handling of important evidence, and the striking lack of notice to clearly interested parties. The record reflects that plaintiff made a determination to pursue subrogation yet proceeded to alter the scene of the fire and discard evidence without notice to anyone. (See Paragraph 4 of Hagan Declaration, attached hereto as Exhibit "3"). The Westin Hotel had a duty under Chapter 29 of NFPA 921. (See Paragraphs 11 and 12 of Hagan Declaration).

Hagan also addresses plaintiff's concern that he could not testify as to the temperature at which the fusible link would melt in our fact pattern. Hagan concludes in his declaration that the fusible link would likely be exposed to its melting temperature long before flames would have traveled past the damper. (See Paragraphs 14-16 of Hagan Declaration.)

Finally, Hagan sets forth the plain fact that the largest damper failed to operate because it was pinned open mechanically. The role of the fusible link was made moot. The damper could not function because it was pinned open. See Paragraphs 17-19 of Hagan Declaration.)

It is unnecessary to conduct the extensive testing for Mr. Hagan's opinions to be admissible. Mr. Hagan, co-defendant's expert Mr. Porto, and even the Chief Engineer of the Westin, all reached the same conclusion that properly functioning fire dampers are designed to prevent the spread of fire. (Porto Report pg. 21 citing the NFPA Fire Protection Safety Handbook (20th Edition Sec. 10-73) (attached hereto as Exhibit "4") and Horne Depo., pgs. 55:25-56:4 and 67:24-68:7 (attached hereto as Exhibit "5")). Mr. Hagan reached the conclusion that "[m]ore likely than not, a fire originating inside the laundry shaft would have not spread to ductwork and equipment inside the laundry room if all four dampers had been properly

inspected and maintained prior to the fire." (See Hagan Report pg. 3). Further, in Mr. Hagan's deposition he stated that the fusible link on these fire dampers melted at a lower temperature than most normal fusible links. (Hagan Deposition 63:3-8) (attached hereto as Exhibit "6"). Mr. Hagan also concluded that in order to calculate the specific time it would take for these fusible links to melt you would need to know the conditions of the damper and specifically the amount of lint involved. (Hagan deposition 65:1-11). These factors were denied to all experts by the Plaintiff's own spoliation of evidence.

Steve Ayers Construction's expert, Christopher J. Porto, also reached the conclusion that the "fusible links used on the fire dampers in this case would melt causing the dampers to activate if the temperature reached 165 degrees. (Porto Declaration Paragraph 18) (attached hereto as Exhibit "7"). Accordingly, Porto concluded that because the dampers were not in their original state as designed "to interrupt migratory flow, and restrict the passage of the flame" they were prevented from closing, allowing the fire to spread through the hotel. (Porto Report pg. 21).

Plaintiff argues that more testing needs to be done to prove the conclusion reached by Mr. Hagan, but the Plaintiff has made it very difficult for any additional testing to be done. The fire dampers were all thrown into a dumpster by the Plaintiff

following the incident (but luckily recovered by an employee of Steven Ayers Construction. (Hagan Report pg. 3)). The Westin began removing the ductwork before notifying anyone that it would be seeking subrogation. The ductwork inside the laundry room was replaced even before Plaintiff's expert could conduct his first inspection. (Zurich Amanda Hinkle Deposition 14:3-14) (attached hereto as Exhibit "8"). Having this ductwork would have been instrumental in helping any fire expert determine exactly how fast the fire would have spread throughout the dampers. (Hagan Deposition pg. 107:4-10). Any testing that could not be done was due to a spoliation of evidence by the Plaintiff.  This misconduct by Plaintiff cannot be used as grounds to exclude the expert opinions of Mr. Hagan. Therefore, it is clear from Mr. Hagan's deposition testimony along with his Expert Report that his conclusions were reached by a review of data and the approved scientific testing in the lab of the fire dampers along with his extensive experience in the field.  His opinions should be admissible and are not simply Ipse Dixit as Plaintiff alleges.

## 2. Frank Hagan's opinions in his report and deposition testimony would be helpful to a jury

Plaintiff attempts to argue that a jury would be confused and misled by Mr. Hagan's statements regarding the fire dampers. Mr. Hagan was retained as an expert to help the jury in determining the origin and cause of the subject hotel laundry shaft

fire, and how the fire spread that damaged equipment and ductwork inside the hotel laundry room. Further, Mr. Hagan was retained to determine whether the fire suppression systems were compliant with the applicable fire codes. All of this information is beyond the scope of a lay person, and the defense counsel. Therefore, it is imperative that an expert is available to explain these codes to a jury and how they are applied.

Mr. Hagan's opinions regarding whether or not the fire dampers would have prevented the fire are based on more than just his personal opinions as explained above, but are based on the facts of the case, his review of extensive data, testing of the fire dampers in a lab environment, and his extensive experience in the field. Therefore, it is clear that Mr. Hagan's opinions were formed based on the facts of this case coupled with his expertise in the field, and are not simply Ipse Dixit as Plaintiff tries to argue.

## CONCLUSION

Plaintiff's concerns more properly go to the weight of Hagan's testimony, rather than providing a basis for disqualification. As such, Plaintiff's Motion to Exclude should be denied.

Respectfully submitted this 7th day of May, 2021.

**HAWKINS PARNELL & YOUNG LLP**

*/s/ Frank C. Bedinger*
Frank C. Bedinger
Georgia Bar No. 046675

*Counsel for Smyrna Rigging Company*

303 Peachtree Street, N.E., Suite 4000
Atlanta, Georgia 30308
Telephone (404) 614-7400
Telecopier (404) 614-7500
fbedinger@hpylaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY, as subrogee of THE** | ) | |
| **WESTIN PEACHTREE PLAZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO:** |
| | ) | **1:19-cv-04807-MLB** |
| **vs.** | ) | |
| | ) | |
| **STEVE AYERS CONSTRUCTION** | ) | |
| **CO., INC., and SMYRNA RIGGING** | ) | |
| **CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>CERTIFICATE OF COUNSEL</u>

The undersigned hereby certifies that he has prepared the within and foregoing document in accordance with LR 5.1, NDGa, and LR 7.1(D), NDGa.  Specifically, counsel certifies that he has used 14 pt. Times New Roman New as the font in these documents.

Respectfully submitted this 7th day of May, 2021.

_/s/ Frank C. Bedinger_
Frank C. Bedinger
Georgia Bar No. 046675

303 Peachtree Street, N.E., Suite 4000
Atlanta, Georgia 30308
Telephone (404) 614-7400
fbedinger@hpylaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY, as subrogee of THE** | ) | |
| **WESTIN PEACHTREE PLAZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO:** |
| | ) | **1:19-cv-04807-MLB** |
| **vs.** | ) | |
| | ) | |
| **STEVE AYERS CONSTRUCTION** | ) | |
| **CO., INC., and SMYRNA RIGGING** | ) | |
| **CO., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date caused to be served upon all counsel a true and correct copy of **DEFENDANT SMYRNA RIGGING COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY AND REPORT OF FRANK HAGAN** by electronic filing and/or by depositing same in the United States Mail in an envelope with sufficient postage affixed thereto and addressed to:

David M. Bessho
COZEN O'CONNOR
Promenade II, Suite 400
1239 Peachtree Street, NE
Atlanta, GA 30309

Matthew G. Moffett
Chris J. Perniciaro
GRAY, RUST, ST. AMAND,
MOFFETT & BRIESKE, L.L.P. 950
East Paces Ferry Road

Suite 1700-Salesforce Tower Atlanta
Atlanta, GA 30326

Respectfully submitted this 7th day of May, 2021.

**HAWKINS PARNELL & YOUNG LLP**

*/s/ Frank C. Bedinger*
Frank C. Bedinger
Georgia Bar No. 046675

*Counsel for Smyrna Rigging Company*

303 Peachtree Street, N.E., Suite 4000
Atlanta, Georgia 30308
Telephone (404) 614-7400
Telecopier (404) 614-7500
fbedinger@hpylaw.com

iManage 13184117v.1